George B. Hofmann (10005)
Matthew M. Boley (8536)
Steven C. Strong (6340)
**Parsons Kinghorn Harris**
A Professional Corporation
111 E. Broadway, 11th Floor
Salt Lake City, UT  84111
Telephone: (801) 363-4300
Facsimile:  (801) 363-4378
E-mail:  gbh@pkhlawyers.com
        mmb@pkhlawyers.com

*Attorneys for* debtor-in-possession
xVITA, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**XVITA, LLC**,<br><br>    Debtor. | Bankruptcy No. 12-32520 RKM<br><br>Chapter 11<br><br>Honorable R. Kimball Mosier |

## MEMORANDUM OF LAW IN SUPPORT OF
## CONFIRMATION OF DEBTOR'S PLAN OF LIQUIDATION

# TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ........................................................................................ ii
PRELIMINARY STATEMENT ..................................................................................... 1
BACKGROUND ........................................................................................................... 2
ARGUMENT ............................................................................................................... 10
  I.  THE PLAN MEETS EACH OF THE REQUIREMENTS FOR CONFIRMATION
      UNDER SECTION 1129 OF THE BANKRUPTCY CODE .................................. 10

    A. Section 1129(a)(1) – The Plan Complies with the Applicable Provisions of
       Title 11 ........................................................................................................ 10

    B. Section 1129(a)(2) – The Debtor Has Complied with All Applicable Provisions
       of Title 11 .................................................................................................... 15

    C. Section 1129(a)(4) – All Payments to be Made by the Debtor in Connection
       With this Case Are Subject to Approval by the Court. .................................. 17

    D. Section 1129(a)(6) – The Plan Does Not Provide for Any Rate Change
       Subject to Regulatory Approval. .................................................................. 17

    E. Section 1129(a)(7) – The Plan is in the Best Interests of Creditors .............. 18

    F. Section 1129(a)(8) – The Plan Has Been Accepted By the Requisite Classes
       of Creditors. ................................................................................................ 18

    G. Section 1129(a)(9) – The Plan Provides For the Payment of Priority Claims. 19

    H. Section 1129(a)(10) – The Plan Has Been Accepted By at Least One
       Impaired, Non-Insider Class. ....................................................................... 20

    I.  Section 1129(a)(11) –  The Plan is Feasible. ............................................... 20

    J. Section 1129(a)(12) – The Plan Provides for the Payment of Fees. ............. 21

    K. Section 1129(a)(13) – Obligations to Pay Retiree Benefits. .......................... 21

    L. Section 1129(b) – "Cram Down" Requirements. ........................................... 22

    M. Section 1129(c) – Only One Plan is Being Confirmed .................................. 22

    N. Section 1129(d) – The Principal Purpose of the Plan is not Tax Avoidance or
       Avoidance of Securities Laws. ..................................................................... 22

CONCLUSION ........................................................................................................... 23

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                    **PAGE NO.**

In re Armstrong, 292 B.R. 678, 684 (B.A.P. 10th Cir. 2003) ........................................... 19

Bridgeport Jai Alai, Inc. v. Autotote Systems, Inc., 215 B.R. 651 (Bankr. D. Conn. 1997) ........................................................................................... 20

In re Danny Thomas II Ltd. Partnership, 241 F.3d 959 (8th Cir. 2002) ......................... 20

In re First Interregional Equity Corp., 218 B.R. 731 (Bankr. D.N.J. 1997) .................... 11

In re Genesis Health Ventures, Inc., 266 B.R. 591 (Bankr. D. Del. 2001) ..................... 11

In re Jersey City Medical Ctr., 817 F.2d 1055 (3d Cir. 1987) ........................................ 11

In re John Kuhni Sons, Inc., 10-29038 RKM, 2011 WL 1343206 at *4 (Bankr. D. Utah Mar. 30, 2011) .............................................................................. 19

In re Jones, 530 F.3d 1284, 1291 (10th Cir. 2008) ........................................................ 19

Kane v. Johns-Manville Corp., 843 F.2d 636 (2d Cir. 1988) ......................................... 11

In re Keck, Mahin & Cate, 241 B.R. 583 (Bankr. N.D. Ill. 1999) ................................... 11

In re Lotspeich, 328 B.R. 209, 219 (B.A.P. 10th Cir. 2005). ......................................... 22

In re PWS Holding Corp. Brunos, Inc., 228 F.3d 224 (3d Cir. 2000) ............................ 11

In re Ruti-Sweetwater, Inc., 836 F.2d 1263, 1267-68 (10th Cir. 1988) ............... 8, 19, 22

In re SLC Ltd. V, 137 B.R. 847, 850 (Bankr. D. Utah 1992) ......................................... 22

**FEDERAL CASES (Cont'd)** ........................................................... **PAGE NO.**

Unruh v. Rushville State Bank of Rushville, Mo., 987 F.2d 1506, 1508 (10th Cir. 1993) ........................................................................................... 22

In re Wabash Valley Power Association, 72 F.3d 1305 (7th Cir. 1995) ......................... 11

In re Woodbrook Associates, 19 F.3d 312 (7th Cir. 1994) ............................................. 11

**FEDERAL STATUTES**                                                 **PAGE NO.**

Bankruptcy Code § 109 ................................................................................................. 17

Bankruptcy Code § 363 ................................................................................................... 1

Bankruptcy Code § 506 ................................................................................................. 22

Bankruptcy Code § 507 ................................................................................................. 12

Bankruptcy Code § 1114 ............................................................................................... 21

Bankruptcy Code § 1121 ............................................................................................... 17

Bankruptcy Code § 1122 ........................................................................................... 11-12

Bankruptcy Code § 1123 ............................................................................... 11-15

Bankruptcy Code § 1125 ............................................................................... 15-16

Bankruptcy Code § 1129 ....................................................................2, 9-11, 15-22

## LEGISLATIVE HISTORY                                         PAGE NO.

H.R. Rep. No. 95-595, at 412 (1977), <u>reprinted in</u> 1978 U.S.C.C.A.N. 5962, 6368. 11, 16

S. Rep. No. 95-989, at 126 (1978), <u>reprinted in</u> 1978 U.S.C.C.A.N. 5787, 5913..... 11, 15

## FEDERAL RULES                                               PAGE NO.

Fed. R. Bankr. P. 3016(a) ............................................................................. 15

Securities Act of 1933, Section 5 .............................................................. 22-23

xVITA, LLC, debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 bankruptcy case (the "**Case**"), through counsel, submits this memorandum of law in support of confirmation of the *Plan of Liquidation Under Chapter 11 of the Bankruptcy Code dated May 2, 2013* [Docket No. 151] (the "**Plan**").

## PRELIMINARY STATEMENT

The Plan represents a good faith proposal by the Debtor to provide repayment of its creditors.  The Plan is the result of substantial effort and negotiations with creditors.

The Plan contemplates the payment in full of the principal amount of general unsecured claims, and further contemplates a meaningful distribution to the holders of subordinated claims.  Equity holders will neither receive nor retain anything under the Plan, and all equity interests will be cancelled.

Repayment of creditor claims will be funded by a combination of (a) the cash proceeds from the sale of substantially all of the Debtor's assets, which approved by the Court pursuant to section 363 of the Bankruptcy Code, and (b) an orderly liquidation of the Debtor's remaining assets as described in sections 5.2, 5.3 and 5.5 of the Plan and pursuant to the terms of the Liquidating Trust.[1]

The Plan provided for the payment of Class 1 Priority Claims and Class 2 General Unsecured Claim on the Initial Distribution Date, *i.e.*, thirty days after the Effective Date of the Plan.  The Plan further contemplates a partial payment to the holder of Class 3 Aries Claim on the Initial Distribution Date, with future payments dependent upon the orderly liquidation of the Debtor's remaining assets by the Liquidating Trustee according to the terms of the Liquidating Trust.

---

[1]    This and other capitalized terms not otherwise defined herein shall have the meaning ascribed thereto under the Plan.

All creditor constituencies have accepted the Plan and support confirmation. Further, no creditor or other party-in-interest has filed an objection to confirmation of the Plan.

All creditor classes have accepted the Plan:

- Class 1:  no ballots were returned; acceptance is presumed.
- Class 2:  6 accepting ballot (totaling $5,477.54 or 99.86%);
            1 rejecting  ballot (totaling $    7.50  or  0.14%).
- Class 3:  2 ballots unanimously accepting the Plan.

Class 4 Equity Interests were not entitled to vote on the Plan.  Because their equity interests are cancelled under the Plan, Class 4 is deemed to reject the Plan. In any event, the Plan satisfies the "cram down" requirements applicable as to Class 4.

As evidenced by the spirit and substance of the Plan, the voting results, and the absence of any objections, the Plan is in the best interests of the Debtor's estate and creditors.  In addition, as demonstrated in this memorandum, the Plan satisfies all requirements for confirmation set forth in section 1129 of the Bankruptcy Code. Accordingly, the Debtor respectfully submits that the Plan can and should be confirmed.

## BACKGROUND

1.     The Debtor formerly conducted business under the trade names HAVVN and JUS International.  Its business was the manufacture, sale and marketing of natural skin care and anti-aging products, nutritional supplements, and antioxidant supplements by the Debtor and its subsidiaries.

2.     From its inception in 2007 through November 2011, the Debtor marketed its products using a multi-level marketing strategy.  Beginning in December 2011 the Debtor transitioned to direct sales of its products to customers using an e-commerce strategy.

3.      Through the course of 2012 it became evident that the Debtor's sales were in decline and that, absent a large infusion of capital to redirect the business, the business would gradually decline to nothing.

4.      Aries Capital Partners, LLC ("**Aries**") previously had provided capital to the Debtor both in the form of debt and equity.  Aries, however, was not willing to provide the additional capital the Debtor needed to solve its cash flow issues in 2012. The Debtor was unable to locate alternative sources of capital.

5.      The Debtor concluded that the best solution would be a sale of its business, and sought out parties who might be interested in the purchase.  To facilitate its continued operations pending the sale of its business, the Debtor sought bankruptcy protection under chapter 11 of the Bankruptcy Code.

## RELEVANT PROCEDURAL HISTORY

6.      On October 1, 2012 (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code.

7.      From the Petition Date through the present, the Debtor has operated its business and managed its properties as a debtor-in-possession.

8.      No official committee of creditors has been appointed in the Case.

9.      No examiner or trustee has been appointed in the Case.

10.     On October 1, 2012, the Debtor file a motion [Docket No. 7] requesting authority to reject the lease of certain nonresidential real property located in Boise, Idaho (the "**Boise Lease**"), which property was owned by First Resort, Inc. ("**First Resort**").

11.     On October 26, 2012, the Court entered its order [Docket No. 24] authorizing the Debtor to reject the Boise Lease.

12.     On November 2, 2012, First Resort filed a claim [Claim No. 4] (the "**First Resort Claim**") relating to its alleged damages arising from breach of and/or rejection of the Boise Lease.

13.     On November 8, 2012, the Debtor filed a motion to approve the sale of substantially all of its assets through an auction process [Docket No. 28] (the "**Sale Motion**").  The Sale Motion included a stalking-horse proposal by JK Havvn, LLC ("**JK Havvn**") to purchase substantially all of the Debtor's operating assets.  JK Havvn offered total consideration of (i) $200,000 if the closing occurred by November 30, 2012, (ii) $180,000 if the closing occurred by December 31, 2012, or $160,000 if the closing occurred by January 29, 2013.

14.     On November 14, 2012, the Debtor filed a motion requesting authority to pay certain trust fund taxes [Docket No. 49].

15.     On November 16, 2012, the Debtor filed a proposed plan of liquidation [Docket No. 57].

16.     On November 20, 2012, the Debtor filed an objection [Docket No. 59] to the First Resort Claim.

17.     On or about November 26, 2012, First Resort filed an objection to the Sale Motion [Docket No. 62] (the "**First Resort Objection**").

18.     On or about December 8, 2012, First Resort filed a motion asking the Court to abstain, to appoint a trustee and/or to dismiss or convert the Case [Docket No. 83] (the "**Motion to Dismiss**").

19.     On or about December 17, 2012, the Debtor agreed upon terms for a multi-party settlement (the "**First Resort Settlement**") as memorialized by that certain Settlement Agreement, dated as of December 17, 2012, by and between the Debtor, First Resort, Aries Capital Partners, LLC and Aries Nutritional Products, LLC.

20.     On December 18, 2012, the Debtor filed a motion [Docket No. 88] asking the Court to approve the First Resort Settlement.

21.     The Sale Motion came on for hearing on December 18, 2012 with regard to the Debtor's request for approval of auction and bidding procedures.  The Court approved the proposed bidding procedures at the hearing and, on December 20, 2012, the Court entered its *Order Approving Bid Procedures for Sale of Substantially All of Debtor's Assets* [Docket No. 93] (the "**Procedures Order**").

22.     On January 10, 2013, the Court entered an order [Docket No. 98] (the "**Settlement Order**") approving the terms of the First Resort Settlement.

23.     Pursuant to the terms of the Settlement Order, the Debtor paid $213,417 to First Resort in full satisfaction of the First Resort Claim.

24.     Pursuant to the First Resort Settlement and the Settlement Order, the claims of Aries Capital Partners, LLC and Aries Nutritional Products, LLC were and are subordinated to other claims to the extent necessary to permit allowed unsecured claims to be paid in full.

25.     On January 17, 2013, pursuant to the First Resort Settlement, First Resort filed a notice of withdrawal [Docket No. 102] of both the Motion to Dismiss and the First Resort Objection.

26.     On January 17, 2013, the Debtor received a qualified bid in the amount of $170,000 from Red Barn Holdings, LLC, *i.e.*, a competing buyer.

27.     Pursuant to the Procedures Order, the Debtor conducted an auction on January 21 and 22, 2013.  The highest and/or best bid presented at the auction was submitted by JK Havvn, which increased its purchase price from $160,000 to $210,000.  In addition, JK Havvn agreed to assume the Debtor's obligations under two executory contracts with an entity called N PWR Ventures, LLC ("**N PWR**").

28.    The sale to JK Havvn (the "**JK Sale**") was approved by the Court at a hearing on January 22, 2013.  On January 22, 2013, the Court entered its Order approving the JK Sale [Docket No. 105] (the "**JK Sale Order**").

29.    The JK Sale closed on January 23, 2013.

30.    Since the sale of its operating assets to JK Havvn, the Debtor has managed and preserved its non-operating assets, including its interests in five wholly-owned foreign subsidiaries (collectively, the "**Foreign Subsidiaries**"):  HAVVN Japan K.K; Bienes Y Productos JUS en Mexico S De RL; Servicios Direccionales Jus De Mexico S De RL De CV; Jus International Importaciones S De RL De CV; and JUS Europe BV.

31.    On February 25, 2013, the Debtor filed an objection [Docket No. 109] to the claim of Apricot Orchard, LLC.

32.    On March 6, 2013, the Debtor filed an objection [Docket No. 114] to the claims of various state taxing authorities.

33.    On March 27, 2013, the Court entered an Order [Docket No. 123] disallowing the claim of Apricot Orchard, LLC.

34.    On April 4, 2013, the Debtor filed the Plan [Docket No. 130], a proposed disclosure statement [Docket No. 129], together with a motion to approve the disclosure statement and confirmation procedures [Docket No. 131].

35.    On April 9, 2013 and April 16, 2013, the Court entered Orders [Docket Nos. 136 and 139] disallowing various claims of state taxing authorities.

36.    A hearing on adequacy of the Debtor's proposed disclosure statement was held on May 2, 2013, at which time the Court approved the disclosure statement.

37.    On May 7, 2013, the Court entered its *Order (i) Approving Disclosure Statement with Respect to Debtor's Plan of Liquidation Under Chapter 11 of the Bankruptcy Code, (ii) Establishing Voting Record Holder Date, (iii) Approving Solicitation Procedures, Forms of Ballots, and Manner of Notice, and (iv) Fixing the*

*Deadline for Filing Objections to the Confirmation of the Plan, and Reducing Time for
Confirmation Hearing and Objections to Confirmation* [Docket No. 147]  (the
"**Confirmation Procedures Order**").

    a.    The Debtor's *Disclosure Statement with Respect to Plan of
Liquidation Under Chapter 11 of the Bankruptcy Code* in the final form approved by the
Court was attached as Exhibit A to the Confirmation Procedures Order (the "**Disclosure
Statement**").

    b.    The deadline for persons and entities to return their Ballots
accepting or rejecting the Plan was 4:00 p.m. Mountain Time on June 3, 2013 (the
"**Voting Deadline**").

    c.    Pursuant to paragraph 12 of the Confirmation Procedures Order,
the deadline for any creditor or party-in-interest to file an objection to confirmation of the
Plan was 4:00 p.m. Mountain Time on the Voting Deadline.  The Confirmation
Procedures Order further required that any objection to confirmation must be served, by
the same deadline, upon counsel for the Debtors and counsel for the United States
Trustee.  Finally, the order specified:  "Any objection to confirmation of the Plan must be
in writing and (a) must state the name and address of the objecting party and the
amount of its Claims or the nature of its interest and (b) must state, with particularity, the
nature of its objection."

    d.    Paragraph 3 of the Confirmation Procedures Order provides: "For
voting purposes and mailing of notices pursuant to this Order, May 2, 2013 shall be the
"Record Holder Date" for the holders of Claims[2] and Equity Interests."

38.    As reflected on the *Certificate of Service* of record [Docket No. 149] (the
"**Certificate**"), on May 2, 2013, the Debtor served the *Notice of Order (i) Approving
Disclosure Statement with Respect to Debtor's Plan of Liquidation, (ii) Establishing*

[2] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Plan.

{00167419.DOC / 2}    7

*Voting Record Holder Date, (iii) Approving Solicitation Procedures, Forms of Ballots,
and Manner of Notice, and (iv) Fixing the Deadline for Filing Objections to the
Confirmation of the Plan* [Docket No. 145] (the "**Notice of Confirmation Deadlines**")
upon all creditors and parties-in-interest with standing to be heard regarding
confirmation of the Plan.

39.     As further reflected on the Certificate, on May 2, 2013, the Debtor mailed
to all creditors entitled to vote on the Plan (a) a copy of the court-approved Disclosure
Statement (to which the Plan was attached as Exhibit A), (b) one or more appropriate
ballots, and (c) a copy of the Notice of Confirmation Deadlines.

40.     As reflected in the *Ballot Tabulation Register*, filed on June 4, 2013
[Docket No. 152] (the "**Ballot Register**"), all classes of claims – Classes 1, 2 and 3 –
have accepted the Plan.  Class 4 Equity Interests did not vote, but are deemed to reject
the Plan

41.     Classes 2 and 3 voted to accept the Plan.  Creditors in Class 1 did not
return ballots, and have not filed objections to confirmation.  As such, under controlling
Tenth Circuit precedent, the Court should presume that the non-voting classes have
accepted the Plan.[3]

---

[3]     Under the law of the Tenth Circuit, where a class of creditors does not vote either to accept or
reject the plan, the Court may presume acceptance:

> Since the [secured creditor class] did not object to the Plan at any time
> prior to its confirmation and because the [class] unilaterally opted not to
> vote on the confirmation of the Plan, the bankruptcy court did not err in
> presuming their acceptance of the Plan for purposes of § 1129(b).

> Once acceptance was properly presumed, the court was not obligated to
> inquire as to whether the Plan discriminated unfairly or was not fair and
> equitable to the [non-voting class] under § 1129(b)(1). When the
> [creditors] failed to object to the Plan, they waived their right to challenge
> the Plan or to assert, after the fact, that the Plan discriminated unfairly
> and was not fair and equitable.

In re Ruti-Sweetwater, Inc., 836 F.2d 1263, 1267-68 (10th Cir. 1988).

42.    Class 4 Equity Interests are cancelled under the Plan.  As such, they were not given the opportunity to vote but are deemed to reject the Plan.  In any event, the Plan satisfies the "cram down" requirements of section 1129(b) as to Class 4.

43.    No creditor, equity interest holder or other party-in-interest has filed a timely objection to confirmation of the Plan.

### BRIEF SUMMARY OF THE PLAN

44.    As described in the Plan, the Debtors propose to repay creditors through a combination of (a) the cash proceeds remaining from the JK Sale, (b) an orderly liquidation of the Debtor's remaining assets, *i.e.*, the Foreign Subsidiaries, and (c) recoveries on chapter 5 claims, if any.

45.    The Plan contemplates the creation and funding of a Liquidating Trust and the appointment of Justin Serra as Liquidating Trustee.

46.    As described in section 5.2 of the Plan, all assets of the Estate will be vested in the Liquidating Trust.  The Liquidating Trustee will make the distributions to holders of claims as contemplated under the Plan.  He also will conduct the business, manage the assets and otherwise direct the affairs of the Liquidating Trust.  The Liquidating Trustee also will conduct an orderly liquidation of the remaining assets of the Debtor and its Estate.

47.    Section 4.1 of the Plan provides that the holders of allowed Class 1 Priority Claims will be paid the full principal amount of their Claims on the Initial Distribution Date, *i.e.*, approximately 30 days after the Effective Date or approximately 60 days after the Confirmation Date.[4]

---

[4]    The terms "Initial Distribution Date," "Effective Date," "Confirmation Date" and other defined terms used in the Plan are defined under Article I of the Plan.  The "Confirmation Date" is the day on which the Order confirming the Plan is entered on the docket of the Bankruptcy Court in the Bankruptcy Case.

48.     Section 4.2 of the Plan provides that the holders of allowed Class 2 General Unsecured Claims will be paid the full principal amount of their Claims on the Initial Distribution Date.

49.     Section 4.3 of the Plan provides that the holders of allowed Class 3 Aries Claims will be paid (a) 1.5% of the principal amount of their Claims on the Initial Distribution Date, and (b) thereafter, a pro rata share of cash held or recovered by the Liquidating Trust and that the Liquidating Trustee determines is available to be distributed, after reserving appropriate amounts for legal and other expenses and for Disputed Claims.

50.     Section 4.4 of the Plan provides that all Equity Interests in the Debtor are cancelled and extinguished as of the Effective Date.

51.     Article 5 of the Plan and Exhibit 1 thereto provide for the creation of the Liquidating Trust, the appointment of the Liquidating Trustee, the vesting of the remaining property of the Estate in the Liquidating Trust, and the orderly liquidation of such property for distribution to creditors.

## ARGUMENT

I.     **THE PLAN MEETS EACH OF THE REQUIREMENTS FOR CONFIRMATION UNDER SECTION 1129 OF THE BANKRUPTCY CODE.**

To obtain confirmation of a chapter 11 plan, the proponent must demonstrate that the plan satisfies each of the requirements in section 1129 of the Bankruptcy Code.  As discussed below, the Plan satisfies these requirements and should be confirmed.

A.     **Section 1129(a)(1) – The Plan Complies with the Applicable Provisions of Title 11.**

Section 1129(a)(1) of the Bankruptcy Code provides that a plan of reorganization may be confirmed only if the plan "complies with the applicable provisions of this title." The legislative history of section 1129(a)(1) indicates that the primary focus of this requirement is to ensure that the form of the plan complies with the provisions of section

1122 (classification of claims and interests) and section 1123 (contents of a plan) of the Bankruptcy Code.  See S. Rep. No. 95-989, at 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5913; H.R. Rep. No. 95-595, at 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5962, 6368; see also In re PWS Holding Corp. Brunos, Inc., 228 F.3d 224, 243 (3d Cir. 2000) ("[t]his requires that the plan conform to the applicable provisions of Title 11"); Kane v. Johns-Manville Corp., 843 F.2d 636, 648-49 (2d Cir. 1988) (legislative history indicates that section 1129(a)(1) was intended to require compliance with sections 1122 and 1123); In re Genesis Health Ventures, Inc., 266 B.R. 591, 599 (Bankr. D. Del. 2001) (citing legislative history and cases).

   1. Classification of Claims and Interests.

   The basic rule governing the classification of claims and interests is that the claims or interests within a given class must be "substantially similar" to the other claims or interests in that class.  See 11 U.S.C. § 1122(a).  Notably, the Bankruptcy Code does not require the converse—that all similar claims be placed in one class.  See In re Woodbrook Assocs., 19 F.3d 312, 318 (7th Cir. 1994) ("Section 1122 does not expressly forbid the separate classification of similar claims."); In re Jersey City Med. Ctr., 817 F.2d 1055, 1061 (3d Cir. 1987) ("[W]e agree with the general view which permits the grouping of similar claims in different classes."); In re First Interregional Equity Corp., 218 B.R. 731, 738-39 (Bankr. D.N.J. 1997) (referencing the trustee's power to classify similar claims in different classes).  In fact, courts have recognized that a proponent of a plan "has considerable discretion to classify claims and interests in a chapter 11 reorganization plan" and may classify claims differently if there are " 'good business reasons' for doing so or if the claimants have sufficiently different interests in the plan."  In re Wabash Valley Power Ass'n, 72 F.3d 1305, 1321 (7th Cir. 1995); see also In re Keck, Mahin & Cate, 241 B.R. 583, 589 (Bankr. N.D. Ill. 1999) (the plan proponent "has broad discretion in classifying claims" and may classify similar claims in

separate classes if the proponent "can articulate differences among the claims")
(citations omitted).

The Plan properly classifies Claims.  Article 3 of the Plan provides for the
separate classification of Claims into three distinct Classes[5] based on differences in
their legal nature or priority, and classifies Equity Interests in a fourth Class.

This classification structure is proper because each Class under the Plan differs
in legal character or nature.  Furthermore, all Claims within each Class are substantially
similar to the other Claims in that Class.  Claims within a Class are treated equally.
Accordingly, the classification structure set forth in the Plan is proper, thereby satisfying
the requirements of section 1122.

    2.    <u>The Plan Meets the Requirements of Section 1123(a) of the
Bankruptcy Code</u>.

Section 1123(a) of the Bankruptcy Code identifies seven requirements for the
contents of a plan of reorganization.  As shown in sequence below, the Plan fully
complies with each of these requirements.

    *a.*    *Section 1123(a)(1) — The Plan Designates Classes of
Claims.*

The Bankruptcy Code requires that a plan designate classes of claims, other
than claims of a kind specified in section 507(a)(1) (administrative expense claims),
section 507(a)(2) (claims arising under the "gap" period in an involuntary case), and
section 507(a)(8) (tax claims).  Article 3 of the Plan designates three Classes of Claims
and one class of Equity Interests.  Administrative Expense Claims and Priority Tax
Claims are not classified, but are treated under Article 2 of the Plan.  The Plan therefore
complies with section 1123(a)(1) of the Bankruptcy Code.

---

[5]    In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims
and  Priority Tax Claims have not been classified.

        *b.      Section 1123(a)(2) — The Plan Specifies Unimpaired*
*Classes.*

Section 1123(a)(2) of the Bankruptcy Code requires that the Plan "specify any class of claims or interests that is not impaired under the plan."  There are no unimpaired classes under the Plan.  As such, the Plan meets this requirement.

        *c.      Section 1123(a)(3) — The Plan Specifies the Treatment of*
*Impaired Classes.*

Section 1123(a)(3) of the Bankruptcy Code requires that the Plan "specify the treatment of any class of claims or interests that is impaired under the Plan."  The Plan specifies the treatment of all impaired classes in Article 4, thus satisfying this requirement.

        *d.      Section 1123(a)(4) — The Plan Provides for the Same*
*Treatment of Claims within the Same Class.*

Section 1123(a)(4) of the Bankruptcy Code requires that the Plan "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."  Article 4 of the Plan complies with this provision because all holders of Claims or Equity Interests within a particular Class receive identical treatment under the Plan (unless the holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest).

        *e.      Section 1123(a)(5) — The Plan Provides Adequate Means*
*for its Implementation.*

Section 1123(a)(5) of the Bankruptcy Code requires that a plan of reorganization "provide adequate means for its implementation" and lists certain examples, such as retention by the debtor of all or any part of the property of the estate; transfer of all or any part of the property of the estate to one or more entities, whether organized before or after the confirmation of such plan; merger or consolidation of the debtor with one or more persons; amendment of the debtor's charter; or cancellation or modification of any indenture or similar instrument.  <u>See</u> 11 U.S.C. § 1123(a)(5).  Articles 5 and 6 of the

Plan provide adequate means for its execution and implementation.  They include:

(a) cash distributions to the holders of allowed Class 1 and Class 2 Claims shortly after

the Plan becomes effective, (b) the creation of the Liquidating Trust and appointment of

the Liquidating Trustee; (c) the vesting of the remaining property of the Debtor and its

chapter 11 bankruptcy Estate in the Liquidating Trust; and (c) the orderly liquidation of

assets by the Liquidating Trustee for distribution to creditors.

> f.      *Section 1123(a)(6) — The Required Charter Provisions Are
> Not Necessary or Applicable.*

Section 1123(a)(6) of the Bankruptcy Code specifies that a Plan provide for the

inclusion of provisions in a corporate debtor's charter prohibiting the issuance of certain

nonvoting securities and the establishment of an appropriate distribution of voting

power.  This provision is not applicable in the instant Case because (a) all Equity

Interests are cancelled under the Plan, and (b) all assets and future business of the

reorganized debtor will be conducted by the Liquidating Trustee as he administers the

Liquidating Trust.

> g.      *Section 1123(a)(7) — The Plan Provides for the Selection of
> Officers and Directors.*

Section 1123(a)(7) of the Bankruptcy Code requires that a plan contain only

provisions that are consistent with the interests of creditors and with public policy with

respect to the manner of selection of any officer, director, or trustee.  The Plan and the

Disclosure Statement satisfies this requirement, because the Debtor has properly and

adequately disclosed the identity and affiliations of Mr. Justin Serra, who will serve as

the Liquidating Trustee.  These provisions are consistent with the interests of creditors

and public policy.

3.      Permitted Contents of a Plan.

Section 1123(b) of the Bankruptcy Code identifies various discretionary provisions that may be included in a plan of reorganization, provided they are "not inconsistent with" applicable provisions of the Bankruptcy Code.

As permitted under section 1123(b), the Plan provides for: (a) the rejection of executory contracts and unexpired leases, (see Plan §§ 8.1 and 8.2); and (b) the retention and future enforcement by the Debtor of claims under chapter 5 and applicable non-bankruptcy law, (see Plan §§ 5.1, 5.2 and 6.6).

In addition, the Plan includes provisions (a) governing distributions on account of Allowed Claims, particularly as to the timing and calculation of amounts to be distributed, (see Plan Arts. 4 and 6), (b) establishing procedures for resolving Disputed Claims and making distributions on account of such Disputed Claims once resolved, (see Plan §§ 6.2, 6.3 and 6.4), and (c) regarding the retention of jurisdiction by this Court over certain matters after the Effective Date, (see Plan § 10.1).

4.      The Plan Meets the Requirements of Bankruptcy Rule 3016(a).

The Bankruptcy Rules require that "[e]very proposed plan and any modification thereto shall be dated and, in a chapter 11 case, identified with the name of the entity or the entities submitting or filing it." Fed. R. Bankr. P. 3016(a). The Plan satisfies this rule as it is dated and identifies the Debtor as the person submitting it.

The Plan therefore complies with applicable provisions of the Bankruptcy Code and satisfies the requirements of section 1129(a)(1).

**B.      Section 1129(a)(2) – The Debtor Has Complied with All Applicable Provisions of Title 11.**

The legislative history of section 1129(a)(2) of the Bankruptcy Code indicates that its principal purpose is to ensure that the proponent of a plan complies with the disclosure and solicitation requirements set forth in section 1125 of the Bankruptcy Code. See S. Rep. No. 95-989, at 126 (1978), reprinted in 1978 U.S.C.C.A.N. 5787,

5912 ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure."); H.R. Rep. No. 95-595, at 412 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6368.

Section 1125 of the Bankruptcy Code prohibits the solicitation of acceptances or rejections of a plan of reorganization from holders of claims or interests "unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved ... by the court as containing adequate information."  11 U.S.C. § 1125(b).

This Court approved the Disclosure Statement pursuant to the Confirmation Procedures Order entered on May 7, 2013 [Docket No. 147].  Among other things, the Court specifically found that the Disclosure Statement "contains adequate information within the meaning of Bankruptcy Code § 1125."  (Confirmation Procedures Order ¶ 1.) In addition, this Court considered, and in the Confirmation Procedures Order, approved, among other things, (a) all materials to be transmitted to creditors entitled to vote on the Plan (collectively, the "**Solicitation Package**"), including the form of notice, the form of the Disclosure Statement and the form of ballots, (see Confirmation Procedures Order ¶ 6); (b) the method of delivery of the Solicitation Package, (see Confirmation Procedures Order ¶ 7); and (c) the rules for tabulating votes accepting or rejecting the Plan, (see Confirmation Procedures Order ¶¶ 4, 8-10).  The Debtor delivered the Solicitation Packages to all creditors entitled to vote on the Plan in compliance with the Confirmation Procedures Order.

Moreover, as set forth in the Ballot Register [Docket No. 152], following the distribution of the Solicitation Packages, the ballots of all holders of Claims that were entitled to vote and in fact voted were duly tabulated, in accordance with the rules and procedures set forth in the Confirmation Procedures Order.

The Debtor otherwise has complied with the applicable provisions of the

Bankruptcy Code, except as otherwise provided or permitted by orders of this Court.

The Debtor is a proper debtor under section 109 of the Bankruptcy Code and proper

proponent of the Plan under section 1121(a) of the Bankruptcy Code.

The Debtor has complied with applicable provisions of the Bankruptcy Code and

has satisfied the requirements of section 1129(a)(2).

### C. Section 1129(a)(4) – All Payments to be Made by the Debtor in Connection With this Case Are Subject to Approval by the Court.

Section 1129(a)(4) of the Bankruptcy Code requires that all payments made by

the debtor or by a person issuing securities or acquiring property under a plan, for

services or for costs and expenses incurred in connection with the case or the plan, be

approved by the Court as reasonable.

As set forth in section 2.2(c) of the Plan, all fees and expenses of Professionals

incurred through the Effective Date will be subject to the Court's approval.  Moreover,

section 10.1(b) of the Plan provides that this Court will retain jurisdiction after the

Effective Date to hear and determine all applications by Professionals and others for

compensation and reimbursement of expenses.  Accordingly, the Plan complies with the

requirements of section 1129(a)(4).

### D. Section 1129(a)(6) – The Plan Does Not Provide for Any Rate Change Subject to Regulatory Approval.

Section 1129(a)(6) of the Bankruptcy Code requires that "[a]ny governmental

regulatory commission with jurisdiction, after the confirmation of the plan, over the rates

of the debtor has approved any rate change provided for in the plan, or such rate

change is expressly conditioned on such approval."  The Plan complies with this statute

because the Plan does not provide for any change in rates over which a governmental

regulatory commission has jurisdiction.

**E.      Section 1129(a)(7) – The Plan is in the Best Interests of Creditors.**

Section 1129(a)(7) of the Bankruptcy Code requires that, with respect to each impaired class of claims or interests, each holder of a claim or interest of such class (a) has accepted the plan or (b) will receive or retain property of a value not less than what such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.  This provision is often referred to as a test of whether the plan is in the "best interests" of impaired creditors.

As summarized in the Ballot Register, all classes of Claims have affirmatively have accepted the Plan or, on account unilaterally opting neither to vote nor to object, are presumed to have accepted the Plan.

In any event, the Debtor is prepared to present evidence that the holders of claims in all classes will receive or retain property of a value not less than what such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.  Among other reasons, the Plan proposes (a) payment in full of the principal amount of Class 1 and Class 2 Claims approximately 60 days after the Confirmation Date from cash on hand, and (b) an orderly liquidation of all of the Debtor's remaining assets to pay Class 3 Claims.

Class 4 Equity Interests are cancelled under the Plan and, therefore, are deemed to reject the Plan.  The holders of equity interests, however, would not receive any distribution in a chapter 7 liquidation.  As such, the requirements of section 1129(a)(7) are satisfied as to Class 4.

**F.      Section 1129(a)(8) – The Plan Has Been Accepted By the Requisite Classes of Creditors.**

Pursuant to Section 1129(a)(8) of the Bankruptcy Code, unless a plan is to be confirmed pursuant to the "cram down" provisions of Bankruptcy Code § 1129(b), the plan must be accepted by all impaired classes of claims or interests.

All impaired Classes were entitled to vote on the Plan.  As evidenced by the

Ballot Register, each Class of Claims has accepted the Plan either (a) by affirmatively

voting to accept the Plan, or (b) by opting neither to vote nor to object to confirmation.

See In re Ruti-Sweetwater, Inc., 836 F.2d 1263, 1267-68 (10th Cir. 1988) (presuming

acceptance of class of creditors that did not return a ballot and did not timely object to

confirmation); In re John Kuhni Sons, Inc., 10-29038 RKM, 2011 WL 1343206 at *4

(Bankr. D. Utah Mar. 30, 2011) ("As to the classes wherein no creditors voted …, the

creditors silence is deemed acceptance of the Plan"); In re Jones, 530 F.3d 1284, 1291

(10th Cir. 2008) ("the failure to object constitutes acceptance of the plan"); In re

Armstrong, 292 B.R. 678, 684 (B.A.P. 10th Cir. 2003) ("a nonvoting, nonobjecting

judgment lien creditor is deemed to have accepted the plan").

Class 4 is deemed to reject the Plan.  As described below, however, the Plan

satisfied the "cram down" requirements of section 1129(b) at to Class 4.

## G.    Section 1129(a)(9) – The Plan Provides For the Payment of Priority Claims.

Section 1129(a)(9) of the Bankruptcy Code requires (a) that certain priority

claims be paid in full on the effective date of a plan or upon such other terms as are

agreed, and (b) unless otherwise agreed, that the holders of certain other priority claims

receive deferred cash payments and will be paid in full within five years.  The Plan

satisfies these requirements.

The Plan provides that each Allowed Administrative Expense Claim will be paid

in full in Cash on the later of (1) the date it is due, or (2) the Effective Date.  (See Plan §

2.2(a).)  The Plan provides that professional compensation "shall be paid (i) within ten

days of the entry of the order … approving such award …, or (ii) upon such other terms

as may be mutually agreed …."  (Plan § 2.2(c).)

The Plan provides that the holders of Priority Tax Claims, unless they have agreed to different treatment, will be paid in full on the later of (y) the Effective Date, or (z) the dated the claim would have been due under applicable nonbankruptcy law.

Accordingly, the Plan satisfies the requirements of section 1129(a)(9).

**H.     Section 1129(a)(10) – The Plan Has Been Accepted By at Least One Impaired, Non-Insider Class.**

Section 1129(a)(10) of the Bankruptcy Code requires that the Plan be accepted by at least one class of claims that is impaired under the Plan, determined without including the acceptance of the plan by any insider.  As set forth in the Ballot Report, this requirement is satisfied.

**I.     Section 1129(a)(11) –  The Plan is Feasible.**

Under section 1129(a)(11) of the Bankruptcy Code, a plan of reorganization may be confirmed only if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan."  11 U.S.C. § 1129(a)(11).  One commentator has stated that this section "requires courts to scrutinize carefully the plan to determine whether it offers a reasonable prospect of success and is workable."  7 Collier on Bankruptcy ¶ 1129.02[11] (16th ed. 2011).

Section 1129(a)(11), however, does not require a guarantee of the plan's success.  Rather, the proper standard is whether the plan offers a "reasonable prospect" of success.  See In re Danny Thomas II Ltd. Partnership, 241 F.3d 959, 962 (8th Cir. 2002) ("While a reorganization plan's 'success need not be guaranteed,' the bankruptcy court cannot approve a plan unless it has at least a reasonable prospect for success.") (citations omitted); Bridgeport Jai Alai, Inc. v. Autotote Systems, Inc., 215 B.R. 651, 653 (Bankr. D. Conn. 1997) (stating that success does not need to be "absolutely assured.").

The Plan in the instant Case contemplates the orderly liquidation of all remaining assets of the Estate by the Liquidating Trustee, and distribution of any resulting proceeds to creditors.  In short, the Plan already contemplates the complete liquidation of all of the Debtors' assets.  As such, confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or the Liquidating Trust.

In short, the evidence shows that the plan offers a reasonable prospect of success, and is workable.  As such, the requirements of section 1129(a)(11) are satisfied.

**J.      Section 1129(a)(12) – The Plan Provides for the Payment of Fees.**

Section 1129(a)(12) of the Bankruptcy Code requires that, as a condition precedent to confirmation of a plan of reorganization, "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan."  The Plan complies with this section by providing that such fees "shall be paid in full without prior approval pursuant to 28 U.S.C. § 1930 on or before the Effective Date."  (Plan § 2.2(b).)

**K.      Section 1129(a)(13) – Obligations to Pay Retiree Benefits.**

Section 1129(a)(13) of the Bankruptcy Code requires that a plan of reorganization provide for the continuation, after the plan's effective date, of all retiree benefits at the level established by agreement or by court order pursuant to Bankruptcy Code § 1114 at any time prior to confirmation of the plan, for the duration of the period that the debtor has obligated itself to provide such benefits.  The Debtor does not have any unsatisfied pre-confirmation obligation to pay retiree benefits.  As such, this provision does not apply.

**L.        Section 1129(b) – "Cram Down" Requirements.**

Section 1129(b)(1) of the Bankruptcy Code provides that a plan may be confirmed "notwithstanding" rejections of the plan by one or more classes of creditors or equity holder "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests *that is impaired under and has not accepted, the plan*." 11 U.S.C. § 1129(b)(1) (emphasis added).

A plan proponent, however, need not satisfy the "cram down"[6] requirements of section 1129(b) as to any accepting class.  See Ruti-Sweetwater, Inc., 836 F.2d at 1268 ("Once acceptance was properly presumed, the court was not obligated to inquire as to whether the Plan discriminated unfairly or was not fair and equitable to the [nonvoting secured creditors] under § 1129(b)(1)."); Unruh v. Rushville State Bank of Rushville, Mo., 987 F.2d 1506, 1508 (10th Cir. 1993) (explaining that the absolute priority rule is applicable only to "a *dissenting class* of unsecured creditors.") (emphasis added); see also In re SLC Ltd. V, 137 B.R. 847, 850 (Bankr. D. Utah 1992) (same).

**M.        Section 1129(c) – Only One Plan is Being Confirmed.**

Section 1129(c) of the Bankruptcy Code provides that a court may confirm only one plan.  In the instant case, the Plan is the only plan that has been proposed or will be confined.

**N.        Section 1129(d) – The Principal Purpose of the Plan is not Tax Avoidance or Avoidance of Securities Laws.**

Section 1129(d) of the Bankruptcy Code provides that a court may not confirm a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of application of section 5 of the Securities Act of 1933.  As noted above, the Plan has been proposed with the honest intent to conduct an orderly liquidation of the Debtor's assets and to provide repayment of creditor claims.  Moreover, no party-in-interest that

---

[6]        "This provision is often referred to as the cram down provision of the Bankruptcy Code.  It is so termed because if its provisions are met, a plan can be confirmed or 'crammed down' over the objections of impaired classes."  In re Lotspeich, 328 B.R. 209, 219 (B.A.P. 10th Cir. 2005).

is a governmental unit has objected to confirmation of the Plan on the basis that the

principal purpose of the Plan is the avoidance of taxes or the avoidance of the

application of section 5 of the Securities Act of 1933.  Accordingly, section 1129(d) of

the Bankruptcy Code is satisfied.

### CONCLUSION

WHEREFORE, For the reasons, and based on the authorities and evidence

presented above, and as will be further demonstrated at the Confirmation Hearing, the

Debtor submits that the Plan satisfies all of the applicable requirements of the

Bankruptcy Code and the Bankruptcy Rules and should be confirmed.  Accordingly, the

Debtor respectfully requests that the Court enter an order (a) confirming the Plan, and

(b) granting the Debtor such other and further relief as is just and appropriate.

DATED this 4th day of June, 2013.

**PARSONS KINGHORN HARRIS**


/s/  Matthew M. Boley
*Attorneys for* debtor-in-possession
xVITA, LLC